UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH D FLOWERS, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-01618-DLP-SEB |
| | ) |
| STEERPOINT MARKETING, LLC, | ) |
| JOHN SLIMAK, | ) |
| | ) |
| Defendants. | ) |

### ORDER

This matter comes before the Court on the Plaintiff's Motion for an Award of Statutory Attorney's Fees, Costs, and Post-Judgment Interest (Dkt. 63). The Defendant filed a response on May 29, 2019 and the Plaintiff filed a reply on June 4, 2019. For the reasons set forth below, the Motion is hereby **GRANTED IN PART**.

### I. Background

Mr. Flowers's Complaint alleges that Defendants, SteerPoint Marketing, LLC and John Slimak ("SteerPoint" or "Defendants") failed to pay him overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), Indiana's Minimum Wage Statute, and Indiana's Wage Claims Statute. (Dkt. 1.) On April 1, 2019, SteerPoint submitted a Rule 68 Offer of Judgment to Mr. Flowers, via email, of $25,000. (Dkt. 57 ¶ 4.)

On May 2, 2019, the Court determined that this offer of judgment was enforceable and the Court entered judgment in favor of Mr. Flowers in the amount of $25,000. (Dkt. 61 at 6.) On June 19, 2019, the Defendants moved the Court to set

1

aside the judgment, which did not include attorney's fees and costs, in the interest of fairness and equity. (Dkt. 69.)

On September 3, 2019, the Court determined that the Defendants had not demonstrated any excusable neglect that would support setting aside the judgment. Additionally, the Court held that setting aside the judgment would be inequitable to the Plaintiff himself, because he had duly accepted the Defendants' Rule 68 offer on the advice of counsel. (Dkt. 74.)

## II. Discussion

### A. Offer of Judgment

On May 16, 2019, the Plaintiff filed a Motion for an Award of Attorney's Fees, Costs, and Post-Judgment Interest, seeking a total of $31,195.00 in fees, $444.73 in costs, and 8% post-judgment interest on $9,000.00 of the judgment. (Dkt. 63.) As an initial matter, in cases where the Plaintiff has accepted a Rule 68 offer of judgment, the first step is for the Court to determine whether the Rule 68 offer of judgment included attorney's fees and costs. As noted above, the Court found on September 3, 2019 that the Defendants' April 1, 2019 Rule 68 Offer of Judgment is not inclusive of costs and attorney's fees. (Dkt. 74.) Now, the Court must consider an award of an additional amount to cover those costs and fees.

### B. Attorney's Fees

District courts are instructed to undertake a three-part analysis when adjudicating motions for fees and costs in Fair Labor Standards Act ("FLSA") cases. *Garcia v. Oasis Legal Fin. Operating Co.*, 608 F. Supp. 2d 975, 977 (N.D. Ill. 2009).

First, the Court must determine whether the Plaintiff is actually a prevailing party. *Id.* at 978 (citing *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999).

Next, the Court must determine the amount of a reasonable fee. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983), 103 S.Ct. 1933; *see also Bankston v. Illinois*, 60 F.3d 1249, 1255 (7th Cir. 1995). This product is commonly referred to as the "lodestar." The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *See Hensley*, 461 U.S. at 433. Furthermore, the district court has an obligation to "exclude from this initial fee calculation hours that were not 'reasonably expended'" on the litigation. *Id.* at 434.

Finally, the district court may then increase or reduce the modified lodestar amount by considering a variety of factors. *See id.* at 436; *see also Bankston*, 60 F.3d at 1255–56. Upon weighing the above considerations, the district court is then to exercise its discretion in making an equitable judgment without the constraints of any precise rule or formula. *Decker v. Transworld Sys., Inc.,* No. 09 C 50073, 2009 WL 2916819, at *2 (N.D. Ill. Sept. 1, 2009) (citing *Hensley*, 461 U.S. at 436-37).

Hours that were not reasonably expended, including those that are excessive, redundant, or otherwise unnecessary, must be excluded from the fee calculation. *Hensley,* 461 U.S. at 434. In addition, the Court should also ordinarily disallow "hours expended by counsel on tasks that are easily delegable to non-professional

assistance." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) (internal quotations and citations omitted). However, reasonable, market-rate fees for work performed by paralegals are recoverable. *Missouri v. Jenkins*, 491 U.S. 274, 287 (1989). A court can award paralegal fees if it determines that the tasks performed were sufficiently complex to justify the efforts of a paralegal, as opposed to a clerical employee "at the next rung lower on the pay-scale ladder." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996).

### i. Prevailing Party

Under the FLSA, prevailing plaintiffs are to be awarded reasonable attorneys' fees and costs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *see also Spegon,* 175 F.3d at 550. According to the Seventh Circuit, parties become prevailing if they accept an offer of judgment, no matter how minimal, and have judgment entered in their favor. *Spegon*, 175 F.3d at 550. As a result, Mr. Flowers would be a prevailing party in this case.

### ii. Reasonable Fee

#### a. Hourly Rate

In calculating the lodestar amount, the Court must multiply the hours reasonably expended on the litigation by a reasonable hourly attorney's rate. Plaintiff's counsel Ronald E. Weldy asserts that his reasonable hourly rate is $400 per hour and that his paralegal's hourly rate is $150 per hour. (Dkt. 64.) In his affidavit, Mr. Weldy indicates that he is a sole practitioner who focuses exclusively on

employment and wage cases. (Dkt. 63-1 at 2.) He submitted two affidavits and a copy of a verified fee petition indicating that the hourly rate he charges is right around the market rate for similarly experienced practitioners in the employment field of the local legal community. (Dkts. 63-4, 63-5, 63-6.)

The Defendant does not object to the $400 hourly rate, except to note that Mr. Weldy only began charging that amount on July 1, 2018. (Dkt. 65 at 6.) Prior to that date, Mr. Weldy charged $375 per hour. Mr. Weldy points out in his reply brief that only 4.9 hours were billed prior to July 1, 2018 and that Supreme Court precedent holds that an attorney working on cases, such as those in employment, that may drag out for an extended period, is entitled to a fee based on current market rates. (Dkt. 67 at 4-5.) Mr. Weldy is correct on this point, and the Court finds that it would be reasonable to award him a $400 hourly rate for the entirety of his billing history. The Defendants also do not object to Mr. Weldy's paralegal rate of $150. Accordingly, the Court will approve the $150 hourly paralegal rate.

    b. *Hours Expended*

Attached to his Motion for Attorney Fees, Mr. Weldy included an itemization from his billing software that detailed 68.8 attorney hours and 13.3 paralegal hours, for a total of 82.1 hours spent on this matter through June 4, 2019. (Dkts. 63-2 and 67-2.) On August 8, 2019, Mr. Weldy filed a Notice of Additional Attorney Fees Incurred that purported to notify the Court of an additional 4.2 attorney hours spent on this matter. (Dkt. 72.) For the additional fees, however, Mr. Weldy did not include

any itemization from billing software, or any detail about what those 4.2 hours entailed.

The Defendants object to the number of hours claimed by the Plaintiff, arguing that various tasks were duplicated by Mr. Weldy and his paralegal (for example, the hours related to non-party subpoenas and picture review). (Dkt. 65 at 6.) Additionally, the Defendants argue that the Plaintiff was incarcerated for several months, which delayed discovery and increased costs and fees for both parties, and that Mr. Weldy should not benefit from that delay by an increased attorney fee award. (*Id.*)

Counsel is expected to exercise "billing judgment." *Hensley*, 461 U.S. at 434. When calculating a fee award, the Court should exclude hours that were not "reasonably expended," including "excessive, redundant, or otherwise unnecessary" work. *Id*. The Court may remove any time entries that are vague or insufficiently documented. *Harper v. City of Chi. Heights,* 223 F.3d 593, 605 (7th Cir. 2000). "The relevant inquiry is thus whether the time entries are sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation." *Valerio v. Total Taxi Repair & Body Shop, LLC*, 82 F. Supp. 3d 723, 743 (N.D. Ill. 2015).

As an initial matter, the additional 4.2 attorney hours submitted by Mr. Weldy on August 8, 2019 shall be discounted. Mr. Weldy did not attach any billing invoice or itemization to show how those 4.2 hours were spent. The Court cannot determine

6

whether these time entries are reasonable and necessary to the litigation and, accordingly, the Court disallows those entries.

The majority of the entries that the Defendant objects to are those that relate to administrative or clerical work. (Dkt. 65 at 5-6.) Generally, attorney or paralegal time should not be charged for administrative tasks. *Spegon*, 175 F.3d at 553. Courts in the Seventh Circuit have identified a variety of tasks as being administrative in nature, including organizing file folders, document preparation, copying or faxing documents, scheduling matters, and mailing letters. *See Spegon*, 175 F.3d 544 (Seventh Circuit approving of district court's denial of entry for updating an attorney's "case list" and calendar or holding conferences with a paralegal, and approving of district court's decision to reduce paralegal's fees by half for time spent organizing file folders, document preparation, and copying documents); *Pace v. Pottawattomie Country Club Inc.,* 3:07–CV–347 RM, 2009 WL 4843403, at *13 (N.D. Ind. Dec. 11, 2009) ("The court agrees, however, that certain tasks performed were of a clerical nature, such as: sending pleadings to client; review of appearances, summons, waiver of service and other similar documents; payment to EEOC; drafting cover sheets; and filing documents with the court. Although some of these tasks were performed by a paralegal, they are clerical in nature and cannot be part of the fee award."); *Bratton v. Thomas Law Firm, PC*, 943 F. Supp. 2d 897, 908 (N.D. Ind. 2013) ("contacting the corporation commission in order to obtain registered agent information for the Defendants is clerical in nature").

The first set of problematic entries submitted by Mr. Weldy includes:

- 11/14/2017 – Research Defendant's corporate identity – 0.10
- 11/14/2017 – Email IFP Affidavit to client and set time to go over it – 0.10
- 06/07/2018 – Review Appearance – 0.10
- 08/16/2018 – TCW Clerk re: filing Motion to make hearing telephonic or continue it – 0.10
- 09/05/2018 – File Notice of Change of Attorney Information – 0.10 (paralegal)
- 03/08/2019 – Research registered agents and draft 10 subpoenas – 0.70 (paralegal)

For the entries above, Mr. Weldy appears to include hours for time spent electronically filing documents, reviewing appearances, calling chambers to inquire about whether he needed to file a motion to convert a status conference to telephonic, and researching registered agents or corporate identities. These tasks are not billable at an attorney or paralegal rate. *Spegon*, 175 F.3d at 553. Thus, the Court will disallow these entries entirely. In regard to the research conducted on March 8, 2019, the Court will reduce this entry by half because the Court is unable to discern how much time was spent researching the registered agents as opposed to drafting the subpoenas. The other entries will be disallowed entirely. For these entries above, the total paralegal hours will be reduced by 0.40 and the total attorney hours will be reduced by 0.40.

Mr. Weldy also submitted several time entries that combined legal tasks and clerical tasks, including:

- 05/28/2018 – Draft & file Complaint, Civil Cover Sheet, Appearance, Summons x 2, Motion to Proceed IFP, and proposed order – 1.00
- 06/08/2018 – Revise & file Notice of Service and Service Affidavit – 0.20
- 08/16/2018 – Draft & file Motion to Continue Hearing or make hearing telephonic – 0.40
- 10/01/2018 – Draft & file Notice of Extension of Discovery Response deadline – 0.20
- 10/05/2018 – Draft & file Preliminary Witness & Exhibit Lists – 0.40

- 10/13/2018 – Draft & file Motion to Extend Demand Deadline & proposed order – 0.30
- 11/12/2018 – Draft & file Motion for Continuance of Settlement conference & proposed order – 0.40
- 03/28/2019 – Draft & file Motion to Extend Discovery Deadline & proposed Order – 0.30
- 04/03/2019 – Draft & file Notice of Acceptance of Rule 68 Offer of Judgment – 0.30
- 04/08/2019 – Draft & file Motion to Direct Clerk to Enter Judgment & proposed Order – 0.70
- 04/10/2019 – Draft & file Reply in Support of Motion to Direct Clerk – 1.40
- 04/29/2019 – Draft & file Motion to Stay Dismissal Paperwork & proposed order – 0.30
- 05/16/2019 – Draft & file Motion for Attorney Fees, Brief and Proposed Order – 2.70
- 06/03/2019 – Draft & file Opposition to Motion for Relief from Judgment & Affidavit – 2.00
- 06/04/2019 – Draft & file Reply and Second Affidavit – 3.40

Courts in the Seventh Circuit have determined that time spent electronically filing documents with the Court is clerical work. *Montanez v. Chicago Police Officers Fico, Simon*, 931 F. Supp. 2d 869, 881 (N.D. Ill. 2013). For the entries above, Mr. Weldy indicates that he drafts various documents and then electronically files them with the Court. (Dkts. 63-2, 67-2.) Because Mr. Weldy did not separate out these entries to indicate how much time was spent on drafting and how much time was spent on electronically filing, the Court determines that it is reasonable to reduce each entry by 0.10 for the time it reasonably took to electronically file each document listed. Accordingly, the total attorney hours will be reduced by 2.1 hours.

Mr. Weldy submitted additional entries that bill at his paralegal's hourly rate for clerical work:

- 01/30/2019 – Review pictures from client and draft spreadsheet – 1.90

9

- 02/11/2019 – Review client's pictures and draft spreadsheet – 1.40
- 02/19/2019 – Review photos from client and draft spreadsheet - 0.90
- 02/21/2019 – Review client's photos and draft spreadsheet - 0.40
- 02/26/2019 – Review client's photos and draft spreadsheet – 0.50
- 03/22/2019 – Review pictures from client and draft spreadsheet – 1.20
- 03/24/2019 – Review pictures from client and draft spreadsheet – 2.10
- 03/25/2019 – Review pictures from client and draft spreadsheet – 2.20

The Defendants challenge these entries as excessive and unreasonable because none of this information was produced in discovery. Mr. Weldy addresses these entries in his Reply, asserting that his paralegal worked with the photos of various social media postings to determine whether any were performed during overtime hours. The Defendants argue that neither the spreadsheet nor any of the information obtained from review of the photos were provided to them during discovery.

The Court finds that these entries are problematic because the descriptions are vague. More importantly, this Circuit finds that inputting information into a spreadsheet is considered clerical work. *Valerio*, 82 F. Supp. 3d at 745. It appears from Mr. Weldy's billing summary that his paralegal spent a large number of hours reviewing photographs: to put it in perspective, the evaluation of these photographs took up approximately 20% of the total hours spent litigating this case on the merits. Due to the vagueness of the description, the extreme time spent on reviewing these photos that were not produced, and to account for the clerical work encompassed in those entries, the Court finds it reasonable to reduce the number of hours spent on the photographs by 50%, which would bring the total hours from 10.6 to 5.3.

Finally, Mr. Weldy submitted entries for time spent reviewing his billing summary and for emailing attorneys for affidavits that were never created:

- 04/04/2019 – Review invoice of billing for errors – 0.30
- 04/04/2019 – Review invoice of billing for errors – 0.30
- 05/01/2019 – TCW Williams re: fee petition affidavit – 0.10
- 05/01/2019 – Email Delaney re: fee petition affidavit – 0.10

These four billing entries are not compensable. Mr. Weldy reviewed his invoice twice on April 4, 2019 for errors so that he could send it to Defendants' counsel for possible payment. An attorney cannot bill a client for the time spent inputting entries into a billing summary or ensuring that the billing summary entries are accurate; this work is not in furtherance of the Plaintiff's case, but in furtherance of Mr. Weldy's attorney fee petition. *See Valerio*, 82 F. Supp. 3d at 745. As to the two entries related to the fee petition affidavit, Mr. Weldy did not include information from those two attorneys anywhere in his fee petition, through affidavit or otherwise, so that time is not compensable. This will reduce the total attorney hours by 0.80.

After disallowing entries that are vague, contain clerical work, or non-billable, 68.8 attorney hours has been reduced to 65.5 attorney hours and 13.3 paralegal hours has been reduced to 7.6 paralegal hours.

   c. *Fee Petition Hours*

Next, the Court must consider whether the hours expended on the fee petition were reasonable. While time expended in preparation of a fee petition is compensable, the Seventh Circuit has observed that lawyers often "litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue." *Ustrak v. Fairman*, 851 F.2d 983, 987–88 (7th Cir. 1988). Accordingly, one factor considered in determining the reasonableness of time spent preparing a fee petition is "the

11

comparison between the hours spent on the merits and the hours spent on the fee petitions." *Spegon*, 175 F.3d at 554.

Where the time expended preparing a fee petition is disproportionate to the time spent on the merits of the case, courts reduce the amount of time recoverable for the preparation of the fee petition. *Id.* In *Ustrak*, for example, the prevailing party's attorney spent 15 minutes preparing the fee petition for every hour spent litigating the merits. 851 F.2d at 988. The Seventh Circuit referred to this as "the tail wagging the dog, with a vengeance(,)" and reduced the requested time by two-thirds. *Id; see also Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 411 (7th Cir. 1999) (affirming district court's reduction of attorney's time spent preparing the attorneys' fee motion from 9.9 hours to 1.6 hours where the attorney spent just under 100 hours litigating the merits of the case).

After the above-referenced reductions, Mr. Weldy spent 53.9 hours over 18 months working on the merits of this case. After judgment was entered, Mr. Weldy spent 11.6 hours in 1 month with various tasks related to his fee petition. Based on how much time Mr. Weldy spent during the first year and a half, an appropriate number of hours to have worked on the fee petition was 3.0 hours, which means that Mr. Weldy billed almost four times the rate for the fee petition as he did for his work on the merits of the case. For every one hour Mr. Weldy spent working on the merits of the case, he spent 13 minutes working on the fee petition. In comparing the hours spent on the merits and the hours spent on the fee petitions, the Seventh Circuit and the District Courts have all concluded that ten minutes or more on the fee petition for

12

every hour on the merits is excessive. *Ustrak,* 851 F.2d at 988; *Uphoff,* 176 F.3d at 411; *Valerio,* 82 F. Supp. 3d at 745-46; *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 992-993 (N.D. Ill 2012).

Accordingly, the Court finds it prudent to reduce the number of hours spent on Mr. Weldy's fee petition by thirty (30) percent. This would reduce Mr. Weldy's 11.6 hours to 8.2 hours, making it so that Mr. Weldy spent almost 9 minutes on the fee petition for every hour on the merits.

Based on the recommended reductions in hours, Mr. Weldy will have spent 62.1 hours of attorney time and 7.6 hours of paralegal time. At the $400 rate for attorney hours and the $150 rate for paralegal hours, the lodestar amount in this case, therefore, is $25,980.00.

### iii. *Modification of Lodestar*

After calculating the lodestar, the Court may, at its discretion, increase or reduce the modified lodestar amount by considering a variety of factors, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3.

First, the Court notes that this is a single party wage and hour case related to unpaid vacation, sick time, and overtime hours. It is not a complicated case – it does not require experts or new areas of the law. During the discovery phase of this case, the Plaintiff was incarcerated for 2.5 months, which led to delay in discovery requests and responses, which in turn led to a delay in taking the Plaintiff's deposition. Delays like this increase the cost of litigation and attorney's fees.

When considering the degree of success obtained, the Court notes that the Plaintiff requested compensatory damages, liquidated damages, prejudgment interest, attorney fees, and costs as relief in his Complaint. (Dkt. 1.) In his demand letter, Plaintiff indicated that he was owed $9,024.03 in actual and liquidated damages related to state law wage claims from unpaid salary, vacation, and sick time. (Dkt. 57-1.) Additionally, the Plaintiff asserts that he is claiming between $25,253.64 and $30,404.94 in overtime wages plus $50,507.28 to $60,809.88 in liquidated damages. Plaintiff argues that his "best day in Court without the growing attorney fees would be over $104,000.00." (*Id.*) Plaintiff went on to request $30,659.49, or $49,560.00 with attorney fees, in full settlement of his claim. (*Id.*)

Plaintiff ultimately settled for $25,000. Regardless of whether you base the determination on the total claimed damages of $104,000 or the initial settlement demand of $30,000, the Plaintiff did not obtain complete success. If the Court uses the first figure of $104,000, then the Plaintiff obtained 24% success; if the Court uses the second figure of $30,000, then the Plaintiff obtained 81% success. Using the second figure, the Court finds that a reduction of 19% is reasonable, to account for

Plaintiff failing to obtain complete recovery to the amount of his initial settlement demand. This 19% reduction would reduce Mr. Weldy's lodestar of $25,980.00 to $21,043.80.

### C. Indiana Statutory Post-Judgment Interest

Mr. Weldy additionally requests that this Court impose 8% post-judgment interest per year on the $9,000.00 that the Plaintiff claimed for unpaid salary, vacation, and personal time under Indiana state law. (Dkt. 64 at 8.) Post-judgment interest, Mr. Weldy argues, is applied to all money judgments awarded on Indiana state law claims pursuant to Indiana Code 24-4.6-1-103(b). (*Id.*) Mr. Weldy requests that this Court apply Indiana's rate of eight percent (8%) interest on $9,000 of the Plaintiff's $25,000 judgment. (*Id.*)

The Defendant did not response to Mr. Weldy's request for post-judgment interest. Accordingly, Mr. Weldy's request for statutory post-judgment interest is granted, to the extent that the Defendants are obligated to pay 8% per year post-judgment interest on $9,000.00 of the judgment from May 2, 2019 to the date the damages award is paid.

### D. Costs

Mr. Weldy seeks a total of $444.73 in costs, consisting of $350 for the filing fee, $39.38 for postage, and $55.35 for copies. These costs are included on Mr. Weldy's billing statement to his client. The Defendant does not object to the Bill of Costs. The Court finds that the Plaintiff is a prevailing party, which entitles him to an award of

costs. Accordingly, the Court will award the Plaintiff the requested costs in the amount of $444.73.

### E. Conclusion

As outlined above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for an Award of Statutory Attorney's Fees, Costs, and Post-Judgment Interest (Dkt. 63). The Court **GRANTS IN PART** Mr. Weldy's motion for attorney's fees, **GRANTS** the motion for post-judgment interest, and **GRANTS** the motion for costs. Accordingly, costs in the amount of **$444.73** and attorney's fees in the amount of **$21,043.80**, for a total of **$21,488.53**, should be awarded to Plaintiff's counsel. Additionally, the Defendants are obligated to pay 8% per year post-judgment interest on $9,000.00 of the judgment from May 2, 2019 to the date the damages award is paid.

So ORDERED.

Date: 11/20/2019

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

S. Andrew Burns
COX SARGEANT & BURNS PC
aburns@coxsargelaw.com

Ronald E. Weldy
WELDY LAW
rweldy@weldylegal.com